UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN ADIS, | No. 2:13-cv-1772 DAD |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Commissioner of Social Security, | |
| Defendant. | |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment. For the reasons explained below, plaintiff's motion is denied, defendant's cross-motion is granted, and the decision of the Commissioner of Social Security ("Commissioner") is affirmed.

PROCEDURAL BACKGROUND

On June 24, 2010, plaintiff filed applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act alleging disability beginning on March 1, 2009. (Transcript ("Tr.") at 13, 194-208.) Plaintiff's applications were denied initially, (id. at 119-23), and upon reconsideration. (Id. at 129-33, 140-43.) Plaintiff requested a hearing and a hearing was held before an Administrative Law Judge ("ALJ") on December 21, 2011. (Id. at 45-90.) Plaintiff

1

was represented by counsel and testified at the administrative hearing. (Id. at 45-46.) In a decision issued on February 23, 2012, the ALJ found that plaintiff was not disabled. (Id. at 27.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> 2. The claimant has not engaged in substantial gainful activity since March 1, 2009, the alleged onset date (Exhibit (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: bipolar disorder with mixed psychotic features (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform work at all exertional levels as defined in 20 CFR 404.1567 and 416.967, except the claimant can have occasional public contact and frequent contact with coworkers and supervisors, and can less than occasionally perform fast-paced or high-quota job duties, but can perform job duties at a productive pace.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. The claimant was born on July 2, 1966 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

/////

/////

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Id. at 15-26.)

On July 30, 2013, the Appeals Council denied plaintiff's request for review of the ALJ's February 23, 2012 decision. (Id. at 1-5.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on August 27, 2013.

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

3

>Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled. If not, proceed to step five.
>
>Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

In his pending motion plaintiff asserts the following four principal claims: (1) the ALJ failed to adequately address the opinions of plaintiff's treating physicians; (2) the ALJ erred by not finding that plaintiff met Listing 12.04; (3) the ALJ failed to adequately develop the record; and (4) the ALJ's treatment of the Vocational Expert's testimony constituted error. (Pl.'s MSJ (Dkt. No. 18-1) at 24-45.[1])

**I.     Treating Physician Opinions**

Plaintiff first argues that the ALJ's decision "completely ignores the opinions of Plaintiff's mental health treatment team at Guest House." (Id. at 26.) In this regard, plaintiff argues that, "[w]hile the ALJ discusses the treatment records from Guest House, she did not assign any weight to the opinions of Dr. Wiltse nor any other treaters." (Id.)

Plaintiff's argument, however, confuses the medical records of a treating physician with the medical opinion offered by a treating physician. "The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be

---

[1] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

4

1  given to the opinion of a treating source than to the opinion of doctors who do not treat the

2  claimant . . . ." Lester, 81 F.3d at 830.  It is legal error for an ALJ to discount he opinion of a

3  treating physician without providing a specific and legitimate reason for doing so. Lingenfelter v.

4  Astrue, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007.)

5       Unlike medical opinion evidence, however, "[t]he primary function of medical records is

6  to promote communication and recordkeeping for health care personnel – not to provide evidence

7  for disability determinations." Orn v. Astrue, 495 F.3d 625, 634 (9th Cir. 2007).  Accordingly,

8  "in interpreting the evidence and developing the record, the ALJ does not need to discuss every

9  piece of evidence." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003)

10  (citation omitted).  Instead, the ALJ must only provide an explanation for the rejection of

11  "significant probative evidence." Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984)

12  (citation omitted).

13       Here, plaintiff concedes that the ALJ discussed the treatment records of plaintiff's treating

14  physicians.  (Pl.'s MSJ (Dkt. No. 18-1) at 26.)  Indeed, the ALJ's opinion thoroughly discusses

15  the "[t]reatment records from Sacramento Guest House and the claimant's treating psychiatrist

16  there, Anna Wiltse, M.D." (Tr. at 20.)  Plaintiff argues, however, that the ALJ's "failure to assign

17  any weight" to those records constituted error.  Again, in advancing this argument plaintiff is

18  mistaking treatment records for a treating physician's opinion.  Moreover, plaintiff has failed to

19  point to any specific significant treatment record the ALJ purportedly failed to consider.  In doing

20  so, plaintiff has not established that the ALJ failed to provide an explanation for the rejection of

21  any significant probative evidence.

22       Accordingly, plaintiff is not entitled to summary judgment in his favor with respect to this

23  claim.

24  **II.   Listing 12.04**

25       Plaintiff also argues that the ALJ erred by finding that plaintiff's impairments did not

26  meet the paragraph B criteria set forth in Listing 12.04.  (Pl.'s MSJ (Dkt. No. 18-1) at 29-37.)

27       The Listing of Impairments sets forth, for adults, impairments that have been deemed

28  severe enough to prevent an individual from engaging in any gainful activity, regardless of age,

1  education, or work experience. 20 C.F.R. § 416.925(a). The claimant bears the burden of
2  establishing a prima facie case of disability under the Listing of Impairments. Thomas v.
3  Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (citing Tackett, 180 F.3d at 1098-99). "For a
4  claimant to qualify for benefits by showing that his impairment matches a listing, it must meet all
5  of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). For a claimant
6  to qualify for benefits by showing that his or her impairment, or a combination of impairments, is
7  "equivalent" to a listed impairment, the claimant must present medical findings equal in severity
8  to all the criteria for the single most similar listed impairment. Id. at 531.

9        In order to meet or equal an affective disorder under Listing 12.04, a plaintiff's
10 impairment must satisfy (1) both the paragraph A and paragraph B requirements, or (2) the
11 paragraph C requirements detailed in 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04.[2] To
12 meet the paragraph B requirements a plaintiff must prove that his mental impairments caused at
13 least two of the following: marked deficiencies in either activities of daily living, maintaining
14 social functioning, or concentration, persistence or pace, or repeated episodes of deterioration or
15 decompensation. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04. A "marked" rating
16 indicates a higher degree of limitation than a "mild" or "moderate" rating. 20 C.F.R. Part 404,
17 Subpart P, Appendix 1, § 1200(c).

18       Plaintiff argues that the evidence of record establishes that he had a marked difficulty in
19 maintaining daily living. (Pl.'s MSJ (Dkt. No. 18-1) at 29.) Plaintiff argues that a July 15, 2010,
20 Sacramento County Health Plan Adult Comprehensive Assessment indicated that "functional
21 impairments exists in self-care [and] interpersonal relationship," and that he was assigned a
22 Global Assessment of Functioning ("GAF") score of 45.[3] (Id. at 30.) Plaintiff presented at that
23

---

24 [2] The ALJ's opinion only analyzed plaintiff's mental impairments with regard to paragraph B and paragraph C, finding that plaintiff's impairments did not meet or equal the requirements of either
25 of those paragraphs.

26 [3] A GAF score of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional
27 rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). DIAGNOSTIC AND STATISTICAL MANUAL OF
28 MENTAL DISORDERS TEXT REVISION ("DSM") at 34 (4th ed.2000).

assessment with poor appearance/hygiene, eating and sleeping, energy level, dysphoric mood, anxiety and anger, and obsessive thoughts and grandiose delusions. (Id.) Plaintiff was homeless and had been charged with domestic violence on three occasions in the past 18 months contributing to Child Protective Services taking custody of his daughter. (Id.)

However, as noted by the ALJ, plaintiff and "his companion of 14 years reported he [had] no significant problems with personal care, and he prepares simple meals and does household chores." (Tr. at 17.) Plaintiff reiterated those statements at the December 21, 2011 hearing. (Id. at 66.) Plaintiff also testified that he keeps his appointments "faithfully," (id. at 67), and that he has no problem using public transportation, because he has a "good sense of awareness" as to where he's going. (Id. at 53.) Moreover, on October 27, 2010, a State Agency psychologist opined that plaintiff had no restrictions of activities of daily living. (Id. at 17, 373.) Despite this evidence, the ALJ nonetheless credited plaintiff with "moderate restrictions" in maintaining daily living. (Id.)

Plaintiff also argues that the evidence of record establishes that he had a marked difficulty in social functioning, citing to the Comprehensive Assessment addressed above, as well as his "assaultive behavior," resulting in incidents of incarceration. (Pl.'s MSJ (Dkt. No. 18-1) at 31-35.) The ALJ, however, noted that plaintiff and his companion reported that plaintiff visited with family two to three times a week and attended church two to three times a month. (Tr. at 17.) Moreover, the consultative examiner noted that plaintiff socialized with his companion[4] and the State Agency psychologist, referred to above, opined that plaintiff had no limitation with respect to social functioning. (Id. at 17, 373.) The ALJ, nonetheless, credited plaintiff with "mild difficulties" in social functioning. (Id.)

Finally with respect to paragraph B, plaintiff argues that the record establishes that he had marked difficulties in maintaining concentration, persistence, or pace. (Pl.'s MSJ (Dkt. No. 18-1) at 35-37.) Again, plaintiff cites to the Comprehensive Assessment discussed above, as well as a

---

[4] Plaintiff reported that he had no problem getting along with family, friends, neighbors or others. (Id. at 278.) Moreover, on October 12, 2010, Dr. Timothy Canty examined plaintiff, noted that plaintiff did not "report difficulty interacting with coworkers and supervisors," and found plaintiff to be "quite friendly." (Id. at 348.)

1  September 19, 2011 treatment record, in which it was observed that plaintiff's memory,

2  concentration, judgment and insight were found to be only fair. (Id.)

3  The ALJ, however, noted that while plaintiff had exhibited some deficits in concentration,

4  plaintiff was able to keep a regular daily schedule, care for his own needs and travel

5  independently. (Tr. at 18.) Moreover, the State Agency psychologist opined that plaintiff had no

6  restriction with respect to his concentration, persistence and pace. (Id. at 18, 373.) After

7  considering this evidence the ALJ credited plaintiff with "moderate difficulties" in maintaining

8  concentration, persistence, or pace. (Id.)

9  With respect to paragraph C, plaintiff argues that the Commissioner should have

10  remanded this matter to the ALJ to determine whether plaintiff met the paragraph C criteria. To

11  meet the paragraph C criteria, a plaintiff must have a medically documented history of a chronic

12  affective disorder of at least two years' duration that has caused more than a minimal limitation of

13  ability to do basic work activities, with symptoms or signs currently attenuated by medication or

14  psychological support, and one of the following:  (1) repeated episodes of decompensation, each

15  of extended duration; or (2) a residual disease process that has resulted in such marginal

16  adjustment that even a minimal increase in mental demands or change in the environment would

17  be predicted to cause the individual to decompensate; or (3) current history of one or more years'

18  inability to function outside a highly supportive living arrangement, with an indication of

19  continued need for such an arrangement. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04.

20  In this regard, plaintiff asserts that a December 12, 2012 treatment record reflected that he

21  continued to receive treatment services and that his GAF on November 16, 2011, was 50.[5] (Pl.'s

22  MSJ (Dkt. No. 18-1) at 37-38.) Additionally, a May 17, 2013 "Verification of Services/Ability to

23  Work" letter stated that plaintiff continued to receive services to treat his condition and that his

24  GAF was 50. (Id.) Moreover, that letter concludes that plaintiff meets the definition of disability.

25  (Id. at 38, 397.)

26  /////

27

28  [5] The letter plaintiff refers to is actually dated December 18, 2012. (Tr. at 394.)

Those letters, however, do not provide specific evidence that plaintiff met the requirements of paragraph C noted above. Instead, they merely reflect an opinion that plaintiff was disabled and that his GAF score generally indicated that he was experiencing serious symptoms or a serious impairment in social, occupational, or school functioning. See AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS ("DSM–IV") at 32 (4th Ed. 2000). "[A] doctor's opinion that a claimant is disabled is not itself a medical opinion but an issue reserved exclusively for the Commissioner." Thornsberry v. Colvin, 552 Fed. Appx. 691, 692 (9th Cir. 2014).[6] Additionally, the letters at issue here were not drafted by doctors, but apparently were written by social workers. A social worker is not an acceptable medical source but is instead an "other source." 20 C.F.R. § 404.1513(a)(1)-(5).

Accordingly, the court finds that plaintiff is also not entitled to relief with respect to this claim. See Crane v. Barnhart, 224 Fed. Appx. 574, 578 (9th Cir. 2007) (opinion of state agency physician may be sufficient basis for ALJ's equivalence determination)[7]; Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005) (plaintiff bears the burden of proving he has an impairment that meets or equals Listing).

### III.    Failure to Develop the Record

Plaintiff next argues that the ALJ failed to adequately develop the administrative record in this action. (Pl.'s MSJ (Dkt. No. 18-1) at 38-44.) "In Social Security cases, the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (citation omitted). "The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous." Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005). "One of the means available to an ALJ to supplement an inadequate medical record is to order a consultative examination, i.e., 'a physical or mental examination or test purchased for a claimant at the Social

---

[6] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

[7] See fn. 6, above.

Security Administration's request and expense.'" Reed v. Massanari, 270 F.3d 838, 841 (9th Cir. 2001) (quoting 20 C.F.R. §§ 404.1519, 416.919).

Here, plaintiff was seen by two consultative examiners, Dr. Timothy Canty, a psychiatrist, and Dr. Sanford Selcon, a neurologist. Dr. Canty, however, was not provided with plaintiff's medical records.[8] Plaintiff argues that it is "clear" from Dr. Canty's opinion that a review of plaintiff's medical records "would have been helpful" in evaluating plaintiff's mental condition. (Pl.'s MSJ (Dkt. No. 18-1) at 41.) Plaintiff contends that Dr. Canty himself stated that "[r]eviewing [plaintiff's] records would be helpful." (Id. at 40.) What Dr. Canty actually said, however, was that "[r]eviewing [plaintiff's] records may be helpful." (Tr. at 348.) Dr. Canty then went on to say, "[h]owever, despite [plaintiff's] symptoms he productively worked until last November." (Id.)

Plaintiff also argues that Dr. Canty believed that memory testing was necessary to adequately address plaintiff's mental condition. (Pl.'s MSJ (Dkt. No. 18-1) at 41.) In this regard, Dr. Canty, noted that plaintiff did poorly on the memory test Dr. Canty had administered but that plaintiff informed Dr. Canty that "his work was perfectly acceptable to his last employer." (Tr. at 348.) Dr. Canty was "not sure what to make of this discrepancy," and stated that "[m]emory testing could be employed to clarify this but once again [plaintiff's] reported functioning seems to indicate that this is not much of an issue." (Id.)

Based on the findings of his examination, Dr. Canty ultimately concluded that plaintiff would have no difficulty returning to "restaurant work," in part because plaintiff did not "report symptoms that have or would prevent him from attending work," and that plaintiff was "[i]n fact . . . actively pursuing" work. (Id.) An examining physician's opinion constitutes substantial evidence when it is based on independent clinical findings. Orn, 495 F.3d at 631. Nonetheless, the ALJ found that plaintiff did have "some mild symptoms," and that he could not return to

---

[8] Dr. Selcon, likewise, did not review plaintiff's medical records in conducting his examination of the plaintiff. However, a reading of Dr. Selcon's opinion reveals no reason to believe he thought a review of plaintiff's medical records was necessary, or even helpful. Moreover, after detailing the results of his examination of plaintiff, Dr. Selcon concluded his opinion by stating simply and directly that plaintiff had "no functional limitations." (Tr. at 35.)

restaurant work.  (Id. at 22.)

Plaintiff has simply put forth no reason to believe that the administrative record was not fully and fairly developed in this case.  Accordingly, plaintiff is not entitled to relief on this claim.

**IV.     Vocational Expert's Testimony**

Finally, plaintiff asserts that at the December 21, 2011, administrative hearing the Vocational Expert ("VE") was asked a hypothetical question by plaintiff's attorney regarding whether an individual who was absent from work one day a week could perform work and that the VE testified that such a person could not perform the jobs identified. (Pl.'s MSJ (Dkt. No. 18-1) at 44.)  Plaintiff argues that the medical evidence of record "indicated that plaintiff was not able to maintain regular attendance," and thus plaintiff could not perform the jobs identified by the vocational expert at the hearing.  (Id. at 44-45.)  In this regard, plaintiff notes that "the record shows that plaintiff had over 60 different employers from the mid 1990s to 2009."  (Id. at 44.)

While an ALJ may pose a range of hypothetical questions to a VE based on alternate interpretations of the evidence, the hypothetical question that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical question that is predicated on the ALJ's final RFC assessment, must account for all of the limitations and restrictions of the particular claimant. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009).  "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."  Id. (citation and quotation marks omitted).  See also Taylor v. Commissioner of Social Sec. Admin., 659 F.3d 1228, 1235 (9th Cir. 2011) ("Because neither the hypothetical nor the answer properly set forth all of Taylor's impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings.").

Here, the fact that plaintiff has held numerous jobs does not establish that plaintiff would be absent from work one day a week.  Moreover, the ALJ acknowledged the hypothetical question posed by plaintiff's attorney, but concluded that "the medical evidence of record and testimony do not support such a residual functional capacity." (Tr. at 26.) Specifically, the ALJ referred to plaintiff's testimony that three to four days a week he walks 1.5 miles to collect and

11

recycle cans starting between 9 a.m. and 10 a.m. for a period of four to five hours.  (Id. at 23.)  On the days plaintiff is not collecting cans he is looking for employment.  (Id.)  The ALJ noted that although those activities did "not equate to competitive employment," they also were "not consistent" with the hypothetical posed by plaintiff's attorney regarding an individual who would be absent from work one day per week.  (Id.)

The court agrees with the ALJ's assessment on this issue and finds no error with respect to the ALJ decision on this point.  Accordingly, plaintiff is also not entitled to relief on this claim.

## CONCLUSION

For these reasons the court finds that plaintiff is not entitled to summary judgment in his favor with respect to any of his arguments.

Accordingly, IT IS HEREBY ORDERED that:

    1.  Plaintiff's motion for summary judgment (Dkt. No. 18) is denied;

    2.  Defendant's cross-motion for summary judgment (Dkt. No. 21) is granted; and

    3.  The decision of the Commissioner of Social Security is affirmed.

Dated:  March 6, 2015

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
Ddad1\orders.soc sec\adis1772.ord.docx